Good morning, Steve Hormel from Ms. Morsette. Ms. Morsette was convicted of three counts in an indictment. One for stealing funds from as an agent of a tribal organization or agency, receiving funds of ten thousand more from the federal government, and then theft from a tribal organization, and then theft of from a health care benefit program. I've raised several issues. The first issue that I raised is whether or not there was sufficient evidence to prove that the funds, the federal funds, were directly given to the Rocky Boy Health Care Health Board. And in reviewing that, I think I'll submit that issue on the briefs. Thank you. You're welcome. The biggest issue, I think, in this case is the admission of CEO Tadios' conviction to use it by the government as substantive evidence of Ms. Morsette's guilt. I also raised insufficiency of evidence of all three counts because I believe there's a relationship between the admission of CEO Tadios' conviction and the sufficiency of evidence based on the conduct that the government alleged. So I want to address that just briefly. In reviewing the sufficiency of the evidence, because there's several acts that were charged by the government, one was taking double paychecks, one was taking severance pay she wasn't entitled to, the other one was taking supplemental pay, and the other one was taking overtime pay, and then requesting more retirement benefits than she was entitled to. If you take away the conviction of CEO Tadios and look at the evidence without consideration of that, because I believe the case law is that you can't use that conviction as substantive evidence, it can only be used as impeachment evidence if it's objective. Did you object to this? I wasn't the trial counsel. Did the trial counsel object? To the admission? Yeah. No. Of a complaint error review. That's correct, but I think the status, it is, except when it comes to sufficiency of evidence, and that's the point I wanted to make. How is the evidence insufficient here? What's your best shot that the evidence was insufficient? She got permission for, I mean, if you look at, if looking at the record as a whole. Well, she didn't get permission for the severance payments, right? She did. She did through CEO Tadios. There was, there was an attempt to, the opposing counsel's going to argue, there was an attempt to hide that from the board, correct? The severance pay? The severance pay was... The email exchange evidence, a concern that that not be, that information not be shown to the board, because she didn't sever her complaint. That wasn't an email between Ms. Morissette and Tadios. That was an email that was sent between, and that would be it, if I could get the excerpt of record. Sure. That was at page, it's Exhibit 16, page 249. It's not a, it's not an email between Ms. Morissette and Ms. Tadios. Right. It's actually an email exchange between another employee and Ms. Tadios. So there's, so what the record in this case shows is that the, Ms. Morissette got approval for that severance pay, and what the other evidence is, is the conflicting evidence between Agent Gouger and Ms. Billy, where Agent Gouger says you can only get severance pay upon termination, which is, you know, I mean, commonly understood. The policies were not admitted, the tribal policies were not admitted, but Ms. Billy, who worked for the tribe, who actually said that she was part of developing the tribal policy, said that there are other reasons for collecting severance pay. And there was insufficient severance pay permitted under the tribal policy. So, again. If you look at, I mean, if a jury had evidence from which they can conclude, that's how we're going to look at this, because this is a conviction appeal. That's correct. So, why isn't it sufficient? Why isn't the other evidence sufficient? Other evidence, okay. On the severance pay? Well, you're telling me, yeah, you're telling me essentially that you think there was conflicting evidence. My question is. On the severance pay. Yeah. Yes, there is. And, and that is, and what I'm saying is, it was insufficient evidence for Agent, Agent, the only testimony that Agent Gouger, Agent Gouger, Agent Gouger, Agent Gouger, Agent Gouger, Agent Gouger, Agent Gouger, Agent Gouger, Agent Gouger, Agent Gouger, Agent Gouger, Agent Gouger, Agent Gouger, Agent Gouger, that that was improper payment of severance pay, is the testimony of Agent Gouger, who said that you can only get it upon termination. There was conflicting evidence from Ms. Billy that said, no, there's other reasons for it. So, what, and it was, the other evidence was that it was proved by CEO Taddeos. If you take CEO Taddeos' conviction away from any consideration of substantive evidence, you're still left with conflicting evidence. Well, you're still left with conflicting evidence, and my question is, why is it insufficient? Is that sufficient beyond reasonable doubt? There was nothing to corroborate Agent, Agent Gouger's testimony. Well, if the jury found him credible, they could believe it. They could believe him. That's true. That is true. As far as the overtime pay? All it takes is one witness, believable witness, on a particular fact, and jury gets the deal. That's true. And as far as the overtime pay is concerned, the government presented no evidence that Ms. Moore said was an exempt employee. They presented her title. They presented the fact that she was a salaried employee. They didn't present, nor did the court, nor did the… Something on the fact that she was not, that she was exempt? They gave testimony that she was exempt, but they didn't establish by law that she was exempt, because there is a whole panoply of rules under the Fair Labor Standards Act that the government argued the tribe was governed by that determines whether a person is, in fact, exempt or not exempt. Right, and that can be a really tricky analysis, but why is the evidence here, that testimony, insufficient? Because the finding of whether somebody is exempt or not exempt is a matter of law. That needs to be determined before it can be, in my opinion, before it can be submitted to a jury as a fact, because there are, to have a witness… Was there, I think you're saying there should have been a foundational objection, then, perhaps, if you're thinking that what would happen is the jury heard a legal conclusion. Was there a foundational objection, because it hadn't been established that she was exempt? No, there was no objection. Okay, so I'm back to why isn't that testimony sufficient? Because I think the status of the law is there has to be a legal determination before you can use it as evidence of guilt. A legal determination by whom? By the judge, by a court, by somebody. And what did you want the judge to conclude? What's that? What should the judge have concluded? Well, going through the factors, whether or not it's a professional exemption, whether or not they're an executive exemption or administrative exemption, all the… So the judge's error here was submitting this to the jury? I think that without a finding that she was indeed, by law, an exempt employee, how could they say she wasn't entitled to overtime? So if I'm understanding your argument, it is that it was plain error for the judge to allow that testimony and to not jump in and strike it. Is that right? I guess that would be another way to express it. But it would still be plain error. But the defense counsel didn't ask the judge to make that determination. That is true. So that was my point. I didn't want to get too far off on that tangent. Wait, you were trying to give us your argument, and I think we've jumped in a couple different ways, about the supervisor, Taddeos' conviction. Yes. And my problem with that, I want to give you a fair opportunity to respond. It seems to me that part of the defense, this was baked in to part of the defense, that your client received permission from her supervisor. Why doesn't that open the door for the government to say, by the way, she was convicted too? Because she's a non-testifying. She wasn't necessarily a co-defendant, but a non-testifying accomplice. Objection? Any objection? No objection. And, in fact, not only not an objection. It was one of the things your team was arguing in the trial court. I appreciate you weren't there. I understand that. But why isn't that sort of game set and match on that question? Well, it isn't because the only reference that the defense team made is in closing argument. Is that really the only reference? Yes, because all of the testimony throughout the trial that related to Ms. Taddeos' conviction was started by the government in an opening statement, presented by Agent Gouger originally, and then through the testimony. Then there was cross-examination. And the evidence of the conviction in the sentence was all unsolicited comments. The defense lawyer wasn't asking questions about the conviction. The agent was throwing in comments about the conviction. It seemed to me that there was an effort to try to mention that many times. By the government. I appreciate that. I read it, and I see what you mean. But, again, no objection. No objection. And a very, in my opinion, the use of it in the closing argument, admitting that there was a culture of corruption up in the tribe and that you should find her not guilty because she's just part of this culture of corruption, I think just is not a defense that is viable. And I guess what I'm trying to say is if you take out anything to do with Ms. Taddeos, and her conduct wasn't even close to what Ms. Morissette did. She was charged with taking money for a trip to go visit her husband, who was in federal prison, and for taking money through a credit card. Nothing to do with pay or anything like that. And the jury wasn't even told that it was different conduct, even if it was admitted. It seems to me that from that you've got this other argument that defense counsel was so ill-advised that he was actually ineffective. Yes. Okay. Why would we reach that on direct appeal? Because I think the record is fairly well established that if, because his argument wasn't, his argument was that there was a culture of corruption up in the tribe and Ms. Morissette was a part of that culture of corruption.  And as the government pointed out, that it may have been an argument more towards jury nullification, which we know is not appropriate. So what was the argument for her innocence? That she, what I gleaned from the closing argument was that she didn't intend to defraud because everybody else was doing it. Well, it sounded more like everybody's doing it. Right. But it's wrapped into the concession that it was part of a culture of corruption. If the argument would have been everybody was receiving severance pay under these circumstances, everybody was receiving overtime pay that was approved by the supervisors and by the board, and everybody could receive double pay as long as it was approved by another board member. And so Ms. Morissette didn't do anything wrong because other people were doing it. But that's not what happened. What happened was it was wrapped into this idea that there's this culture of corruption up in the tribe. He conceded that there was a culture of corruption, which means everybody's committing crimes. And part of his argument was the two people that were above Ms. Morissette were held responsible, so don't hold her responsible. It's just, yeah. So was her argument, getting back to Judge Bybee's question, was her defense, I thought because I had my supervisor's signature that I was not doing anything wrong, or was it everybody's doing it? The closing argument made it sound like everybody was doing it. It would have, without CEO Taddeus' conviction coming in and the use of it by both the prosecution and then the reference to it by the defense counsel, it certainly would have made for a much cleaner, more fairer trial against Ms. Morissette to try to convince the jury that because she had signatures on all of these documents and because Ms. Billy says the policy allowed for severance pay beyond just termination and all this, without the idea that others were convicted of the same conduct, without even explaining what that conduct was because it was totally different, really rendered her trial unfair. I want to get back to the question about why would we take that up without waiting for collateral review? Why would we take it up on direct appeal? But before I do that, I just want to say I do appreciate that the defense wasn't literally, nor was the evidence that everybody was doing it. It was a few people. In case I use that term too loosely, I don't want to disparage anybody else. Sure. But to the legal point, why would we take this up on direct appeal, counsel? The ineffective part? Uh-huh. Just because I think that the record is clear enough and established enough to determine that it was ineffective. You think it's one of those rare cases. Yeah, for failing to object or failing to challenge that evidence whatsoever. But I think I'm asking the court for two reasons to reverse this. The first reason is under plain error, which the cases from the other circuits seem to suggest or do suggest that it's plain error to admit a non-testifying co-defendant's conviction. If you have to look to decisions out of circuit, how plain is it that we're going to hold the district judge accountable for what counsel didn't figure out on his own? In other words, the error was so obvious that the district court is now going to be responsible for not having figured out what counsel couldn't figure out. Well, I think the legal proposition that a non-testifying co-defendant's statement is not admissible except for impeachment is a proposition of law that's more than just limited to other circuits. I think it's a fairly universal understanding. There just hasn't been a decision by this court directly on those kind of facts. But I think that the legal proposition is fairly clear and fairly plain. Okay. You're out of time. I am. But I'll give you a minute for that. Thank you. Let's hear from the government. Good morning, Your Honors. May it please the court, I'm Carl Rosted with the U.S. Attorney's Office from Great Falls. And I was trial counsel, so we'll get right to the point of Taddeus' conviction, which I think is the seminal issue. I agree. And certainly, I'm willing to confess not error on Judge Morris' part, but certainly error on my own. What I should have done was differently, and if we have to retry this case, this is the way it's going to be tried, is I should have brought in Ms. Morset's admission that she'd taken all the money without referencing what her defense was. Pretty common for us, if a person gives a self-serving response to an accusation, that we put that in in our case, but we don't have to and probably shouldn't have in this case, which would have put her in a position of having to take the stand, which she did anyway, to say that she had Ms. Taddeus' permission or Mr. Rosed's permission or other permissions to take all the money that she was taking, approximately $30,000 a year more than her salary. Had that occurred, though, I do not think that the conviction of Ms. Taddeus would have been any sort of error, although we might have gotten into the facts of the conviction. But even then, I probably would have gone with other facts of Ms. Taddeus' culpability, just because Mr. Hormel doesn't have the benefit of having been through these trials. But just because we charged her with the travel fraud that she was convicted of, that wasn't necessarily the only crime she was committing. And had we then done that, we would have been more methodical about saying to Ms. Morsette that, you know, you approved her duplicate salary, you approved her overtime, you approved her takings as well, and then we also would get Ms. Morsette, who was the chief financial officer for the health clinic, then she also was involved in the takings by her other boss, Mr. Rosette, and by the chairman as well as other people in her office. But that didn't happen. But that didn't happen. We got way ahead of ourselves, and that was my fault. But I don't blame Judge Morris for that or concede error on his behalf, because he was familiar with this panoply of cases, so he knew where this was going in a sense of what Ms. Tedios' role was. So the issue here, though, is we're here on plain air review on this issue. Yes. So he's arguing that it was obviously plain air here to let that conviction come in. Just on this record, let's not talk about what you would have done or it has to be retried on this record. Why was it plain air? Well, I don't believe there was plain air. There wasn't plain air. No. Whatever. Because I don't think they can reach the . . . Even if you argued that the judge should have had knowledge of this as being inappropriate, once you get to the third portion of the plain air review standard, would it have an outcome on the case? That's, Judge, why the what-ifs do come into play. I don't know what was on defense counsel's mind in terms of how he was best going to represent Ms. Morset, but he didn't have a whole lot of options. And I can't blame Judge Morris for jumping into a strategy he hadn't developed yet, whether that was a strategy of the defense to make it as . . . The first question on plain air review was, was there error? Yes, sir. Was there error? I don't believe so. In admitting this conviction? There was no error in admitting the evidence of the conviction because she was relying on a good faith defense. All right. That's our position. Did the jury hear that? Not just in closing. Forget the closing argument for a minute. Certainly. But during the course of the trial, the evidence came in through the government's agent, for example. Yes. Didn't the jury hear that there had been admissions made by the defendant to the effect that she had done this to take care of her grandkids? Yes, that's the context in which it came in, Your Honor. To take care of her grandchildren and that she claimed she had permission. Right. They heard that. They knew that. Yes. And the response is, was it a good faith reliance of permission on a person who was participating in the same corruption as she was in terms of larcenous behavior within the health care clinic? If the Court has no other questions, I do believe that's the most central issue of all of them. I don't believe there's – we will do as Mr. Hormel has done and submit the others for the Court's consideration on the briefs. Okay. Thank you. Thank you, Counsel. Unless the Court has any questions. Thank you. Thank you, Counsel. The matter is submitted and that ends our session for today.
judges: Paez, Bybee, Christen